**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **GERTI MEHMEDI, Individually and on** ) | **CASE NO. 1:10CV1591** |
| **behalf of others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | **JUDGE LESLEY WELLS** |
| **v.** ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| **LA DOLCE VITA BISTRO, LLC., et al.,** ) | |
| ) | |
| **Defendants.** ) | **REPORT AND RECOMMENDATION** |

On December 7, 2012, this matter was referred pursuant to Local Rule 72.1 for

consideration of fully briefed dispositive and class-certification motions.  (Doc. Nos. 45, 48 &

54; 47, 49 & 52.)

## I.  Procedural History

On July 19, 2010, Plaintiff, Gerti Mehmeti[1] ("Mehmeti"), filed a Complaint on behalf of

himself and others similarly situated alleging that Defendants La Dolce Vita Bistro, LLC ("La

Dolce Vita"), and Terrence J. Tarantino ("Tarantino") failed to pay wages and overtime pursuant

to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  Specifically, Plaintiff and

the class members (collectively referred to as "Plaintiffs") alleged that they were not paid

overtime wages to which they were entitled as hourly non-exempt employees (time and one-half

of their regular pay rate) for all hours worked over 40 hours per week.  They seek FLSA

damages and injunctive relief.

On November 17, 2010, the Court granted conditional certification of the collective

action.  (Doc. No. 14.)  The following individuals opted in as collective Plaintiffs: Allen Selker,

---

[1]The Court notes that Plaintiff Mehmedi throughout the pleadings and briefs is spelled
either "Mehmedi" or "Mehmeti."  As his name in his affidavit is spelled "Mehmeti," the Court
will use that spelling.  (Doc. No. 13-2.)

Nick Tassone, Bejto Semay, John Bollinger, William Newberry, Jillian Narvis[2], Edward Ross, Michael Thrope, Ben Boncser (hereinafter referred to as "collective-action Plaintiffs" or "opt-in Plaintiffs").  (Doc. Nos. 7-9, 15-19.)

On August 9, 2011, the Court denied Defendants' motion to compel discovery regarding the failure of Plaintiffs to produce tax returns.  (Doc. Nos. 23, 24, 31.)

After discovery and investigation, several of the collective-action Plaintiffs also learned that they had claims for unpaid wages and for hours worked at Tarantino's other restaurant, La Strada, LLC ("La Strada").  Therefore, on July 7, 2011,[3] Plaintiffs sought leave to file a First Amended Complaint.  (Doc. No. 25.)  After leave was granted, the First Amended Complaint was filed on August 9, 2011.  (Doc. Nos. 32-33.)  The Court's Order noted that Plaintiffs were not seeking to alter or delay the litigation by introducing additional defendants, *i.e.* La Strada,. (Doc. No. 32 at 4.)  Instead, Plaintiffs sought compensation for work allegedly performed at Defendants' direction and for Defendants' benefit, regardless of location."  (Doc. No. 32 at 5.) As such, in addition to overtime wages, Plaintiffs are seeking unpaid wages as well as compensation for work allegedly performed at La Strada even though it is not a named Defendant.[4]

Plaintiffs move for partial summary judgment on the issues of liability, the appropriate statute of limitations, and whether an award of liquidated damages is proper.  They also request damages for opt-in Plaintiff Michael Thrope (Doc. No. 45-1 at 19-20), but indicate that the other Plaintiffs' damages are factual questions to be determined by a jury.  Defendants oppose,

---

[2]Subsequently, according to Defendants, Jillian Narvis during discovery admitted that she did not work overtime.  (Doc.  No. 49 at fn.1.)  She is not included among the Plaintiffs seeking summary judgment.

[3]The Court notes that Plaintiffs' motion to amend the complaint was filed after the discovery cutoff date of June 24, 2011.

[4]The Court indicated it did not want to alter or delay the litigation by adding additional defendants: "That such work might have been performed at the La Strada restaurant, rather than at the La Dolce Vita restaurant, does not require enlarging the pool of defendants."  (Doc. No. 32 at 5.)

asserting that there are genuine issues of material fact precluding summary judgment regarding the amount of alleged overtime and the issue of willfulness.  (Doc. No. 48.)  The Court notes that Defendants have not argued the issue of liquidated damages.

Plaintiffs also move for class certification, asserting that the Plaintiffs are all "similarly situated," thereby satisfying the requirements of a collective action.  (Doc. No. 47 at 2.) Defendants oppose, arguing that Mehmeti is an exempt employee and, therefore, not "similarly situated" to the opt-in Plaintiffs.  (Doc. No. 49 at 2.)

## II. Facts

A.    **Gerti Mehmeti**.  Mehmeti was a chef at La Dolce Vita from July, 2007 through approximately February 8, 2010.[5]  (Doc. Nos. 45-12 at 1-2; 45-13.)  He also assisted Tarantino in opening La Strada.  (Doc. No. 45-12 at 4.)  He was paid an hourly rate ranging between $13 and $17 per hour during the relevant time period.  *Id*.  Mehmeti alleges that he was never paid a salary.  *Id*.  As reflected in the employee time cards, Mehmeti regularly worked over 40 hours per week, but was not paid overtime.  (Doc. No. 45-14.)  Furthermore, Manager Jamaa Ajabli testified that Mehmeti was "always" there on weekends, worked open to close, and that on average he worked between 50 and 60 hours per week.  (Doc. No. 43, Ajabli Dep. pp. 47-49.) Tarantino testified that Mehmeti worked 45 to 55 hours per week.  (Doc. No. 44, Tarantino Dep. pp. 40-42.)  Mehmeti contends that Defendants owe him $43,053.50 for unpaid overtime and liquidated damages.  (Doc. No. 45-12 at 12.)

Defendants assert that Mehmeti was paid a salary of $510 per week during 2008 and $680 per week during the years 2008-2010.  (Doc. No. 48 at 5, *citing* Doc. No. 45-13.) Defendants also assert that Mehmeti was paid additional cash bonuses.  *Id*., *citing* Doc. No. 44 at 79-110.

B.    **John Bollinger**.  Bollinger worked for Defendants between July 12, 2010 and August 2, 2010.  (Doc. Nos. 45-6 at 1-2.)  He was a dishwasher and performed prep work at La

---

[5]Mehmeti began working at La Dolce Vita in May, 2005 (Doc. No. 13-2), but because of a two or three year statute of limitations in FLSA cases, the relevant time period begins, at the earliest, in 2007.

3

Dolce Vita.  (Doc. No. 45-6 at 4.)  His pay rate was $7.50 per hour. (Doc. No. 45-6 at 3.) Bollinger testified that he worked 50 hours per week during each of the three weeks he was employed by Defendants.  (Doc. No. 45-6 at 2.)  He further testified that he was paid straight time for hours worked the first two weeks.  *Id*.  During the third week, he was only paid a total of $20.  *Id*.  He seeks $935 (including liquidated damages) for unpaid hours and overtime pay. (Doc. No. 45-6 at 3.)   Defendants admit that Bollinger worked as an employee for three weeks. Nonetheless, Paychex records show that Bollinger worked only one week, clocking 22 hours. (Doc. No. 45-7, Paychex Records.)

C.     **Ben Boncser**.  Between 2003 and August, 2009, Boncser worked as a server at both La Dolce Vita and La Strada as well as in other positions at La Strada.[6]  (Doc. No. 45-8 at 1-2, 5.)  He was paid an hourly rate plus tips.  (Doc. No. 45-8 at 4-5.)  Boncser's hourly rate varied between $8.73 per hour to $14 per hour.  (Doc. No. 45-8 at 4-5.)

Boncser testified that for the majority of his employment he worked approximately 44 to 50 hours per week, but was not paid for all of his hours and did not receive overtime for hours he worked over 40.  (Doc. No. 45-8 at 2.)  He claims unpaid wages and overtime from March 4, 2008, through August, 22, 2009, in the amount of $45,931.04 (including liquidated damages.) (Doc. No. 45-8 at 2, 4.)

D.     **William Newberry**.  Newberry worked as a line cook and chef at La Dolce Vita from July 20, 2008 through October 25, 2008.  (Doc. No. 45-10 at 1-2.)  He testified that he was paid $15 per hour for all hours worked, including those over 40 hours per week.  (Doc. No. 45-10 at 3.)  He seeks unpaid overtime for two weeks in August, 2008 and two weeks in October, 2008, in the amount of $1,170 (including liquidated damages).[7]  (Doc. No. 45-10 at 4.)

E.     **Edward Ross**.  Ross worked as a server at La Dolce Vita between March 20,

_____

[6]The other positions at La Strada included front end manager, host, trainer, and a fill-in for positions as needed.  (Doc. No. 45-8 at 5.).

[7]Newberry testified that the second week of August, 2008 he worked 50 hours, the third week of August, 2008 he worked 78 hours, and in two weeks in October he worked 55 hours each.  (Doc. No. 45-10 at 4.)

2010 and June 29, 2010.  (Doc. No. 45-15 at 1-2, 4.)  He was paid an hourly rate between $12.50 and $15.63 per hour.  (Doc. No. 45-15 at 3-4.)  He testified that he worked approximately fifty hours per week for ten weeks and during the remainder of the time, he worked approximately forty hours per week.  (Doc. No. 45-15 at 2.)  He maintains that Defendants are liable to him in the amount of $8,906.70 (including liquidated damages).  (Doc. No. 45-15 at 3.)

F.     **Allen Selker**.  Between September, 2007 and December, 2009,  Selker worked primarily at La Dolce Vita bussing tables, preparing appetizers, and working the grill and pizza oven.  (Doc. No. 45-17 at 1-2, 5.)  He also worked on several occasions at La Strada performing similar jobs.  (Doc. No. 45-17 at 5.)  In addition he worked for Tarantino at his home or warehouse, cleaning, gardening, and moving equipment.  *Id.*  Selker's hourly rate ranged between $5.50 (plus tips) and $9.00 per hour.  *Id.*  Paychex Records reveal that there were eight weeks that Selker worked over 40 hours per week.  (Doc. No. 45-18, Selker Paychex Records.)  Selker claims that many weeks he worked well-beyond forty hours.  (Doc. No. 45-17 at 3-4.)  Defendants admit he was not paid overtime for any hours worked over 40 and that all of the hours he worked are not reflected in the Paychex records.  (Doc. Nos. 45-2 at 14, 45-18.)

G.     **Bejto Semaj**.  Semaj worked at La Dolce Vita cleaning, washing dishes and performing prep work prior to 2007 through February 2010.  (Doc. No. 45-20 at 1-2, 4.)  He was paid between $10 and $11.50 per hour during the relevant time period.  (Doc. No. 45-20 at 4.)  He claims unpaid overtime from August 30, 2007 through the week of February 6, 2010, in the amount of $39,290.82 (including liquidated damages).  (Doc. No. 45-20 at 3, 9-12.)

H.     **Nick Tassone**.  Between September, 2007, and February, 2010, Tassone worked for Defendants (primarily at La Dolce Vita) washing dishes, performing prep work, serving as the pizza chef, and preparing the salad bar.  (Doc. No. 45-23 at 1-2, 4.)  Occasionally he cleaned for La Strada.  (Doc. No. 45-23 at 4.)  His hourly rate ranged between $7.85 and $9.00 per hour.  *Id.* (Doc. No. 45-24.)  Paychex records and time cards indicate that there were more than 20 weeks that Tassone worked over 40 hours.  (Doc. Nos. 45-24, 45-25.)  He claims that Defendants owe him $13,081.94 (including liquidated damages) for unpaid overtime hours.  (Doc. No. 45-23 at 3, 8-9.)

I.    **Michael Thrope**.  Thrope worked as a dishwasher earning $8.00 per hour at La Dolce Vita during 2009.  (Doc. No. 45-26 at 4.)  He claims that for two weeks he worked overtime, but was paid straight time hours.  *Id*. at 3.  He seeks $120 (including liquidated damages) for unpaid overtime hours.  *Id*.

Although pay cards were produced, Defendants concede that not all cards were located.  (Doc. No. 48 at 10.)  Except for the hours of Michael Thrope, Defendants dispute Plaintiffs' recollection of hours, contending that Plaintiffs are relying on their memory and that the alleged overtime hours far exceed what Plaintiffs actually worked.  *Id*.  Regarding Thrope, however, Defendants do not dispute his hours and admit that he was not paid overtime.  *Id*.

### III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is

6

some metaphysical doubt as to material facts. *Id.* "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Liberty Lobby*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

FLSA overtime exemptions are "affirmative defense[s] on which the employer has the burden of proof," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), and those exemptions "are to be narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007); *Burson v. Viking Forge Corp.*, 661 F. Supp.2d 794, 798-99 (N.D. Ohio 2009). The Sixth Circuit has further observed that an employer "must establish through 'clear and affirmative evidence' that the employee meets every requirement of an exemption.'" *Ale v. TVA*, 269 F.3d 680, 691 n. 4 (6th Cir. 2001) (*quoting Roney v. United States*, 790 F.Supp. 23, 26 (D. D.C. 1992)). The burden of proof shifts to Defendants to establish each element of the exemption and the employee is entitled to summary judgment if the employer fails to create a genuine issue of material fact as to each element. *See Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 579 (6th Cir. 2004. However, "the employer claiming an FLSA exemption does not bear any heightened evidentiary burden." *Thomas*, 506 F.3d at 502-03. In *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007), the court explained:

> We clarify here that the phrase "clear and affirmative evidence" does not heighten [the defendant's] evidentiary burden when moving for summary judgment. The word "clear," as used in this phrase, traces to the "clearly erroneous" Rule 52(a) standard, but the standard is inapposite to our current review of a motion for summary judgment. And because establishing the applicability of an FLSA

exemption is an affirmative defense, [the defendant] has the burden to establish the ... elements by a preponderance of the evidence.

While Defendants have not moved for summary judgment, in their opposition brief they argue that Mehmeti falls under the executive exemption of the FLSA and, therefore, is not similarly-situated to the opt-in Plaintiffs.

## IV.  Law and Analysis

Plaintiffs move for summary judgment on their claims under the Fair Labor Standards Acts ("FLSA").  The Act requires overtime pay—payment at the rate of one and one-half of the regular rate—for all hours worked in excess of a forty-hour work week.  *See* 29 U.S.C. § 207(a)(1).  It also sets forth various exemptions from the overtime requirement.  Relevant to the present case, the overtime requirement in § 207 does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary ...)."  *Id.* § 213(a)(1).

Pursuant to the FLSA, "employees may not be required to work more than forty hours per seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay."  *Wood v. Mid–America Management Corp.*, No. 1:04–cv–1633, 2005 WL 1668503, at *4 (N.D. Ohio Jul.18, 2005) (*citing Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 837 (6th Cir. 2002); 29 U.S.C. § 207(a)(1); *Bowers v. NOL, LLC*, 114 Fed.Appx. 739, 740 (6th Cir. 2004)).

An employee seeking unpaid overtime or unpaid minimum wage under the FLSA bears the "burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).  Because employers are chargeable with maintaining "proper records of wages, hours and other conditions and practices of employment" and are "in [the] position to know and to produce the most probative facts concerning the nature and amount of work performed[,]" the Supreme Court has set forth a "proper and fair standard" in which an employee can "meet ... his burden of proof."  *Id.* at 687.

Recently, the Sixth Circuit discussed the burden shifting framework of *Mt. Clemens*

8

*Pottery* in *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 602–03 (6th Cir. 2009), stating:

> To begin with, a "FLSA plaintiff must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (*citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir.1972)). To determine the extent of damages, the plaintiff can "prove his or her 'under-compensation' damages through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." *Id.* (emphasis added) (*citing Mt. Clemens Pottery*, 328 U.S. at 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515).

*Id.* at 602.  Thereafter, the *O'Brien* Court noted the limitations of the burden shifting framework, finding it applicable only to relax the burden of proving of damages, not liability:

> *Mt. Clemens Pottery* and its progeny do not lessen the standard of proof for showing that a FLSA violation occurred. Rather, *Mt. Clemens Pottery* gives a FLSA plaintiff an easier way to show what his or her damages are. When an employer keeps inaccurate or inadequate records, for a FLSA plaintiff to show what his or her damages were, a FLSA plaintiff does not need to prove every minute of uncompensated work. Rather, she can estimate her damages, shifting the burden to the employer. If the employer cannot negate the estimate, then the "court may award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688, 66 S.Ct. 1187, 90 L.Ed. 1515. In short, *Mt. Clemens Pottery* does not help plaintiffs show that there was a violation under the FLSA. It would only allow them to prove damages by way of estimate, if they had already established liability.

*Id.* at 602–03.

In a case where the employer fails to maintain adequate and accurate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Mt Clemens Pottery,* 328 U.S. at 687-688.  Thereafter, "[t]he burden ... shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.*  The employer's failure in this regard allows the court to "then award damages to the employee, even though the result be only approximate."  *Id.* at 688.

9

### V.  Class Certification

Before the Court can address Defendants' liability towards all Plaintiffs, it must first determine whether certification of the class is proper at this stage.  In order to address certification, the Court will first consider whether Mehmeti is an exempt employee and, therefore, not similarly situated to the opt-in Plaintiffs.

### A.  Exempt Employee - Mehmeti

The employer must prove that an employee is exempt.  *Koppinger v. American Interiors, Inc.*, 295 F.Supp.2d 797, 800 (N.D. Ohio 2003) (*citing Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997)).  The exemption is "narrowly construed against the employers seeking to assert [it]."  *Id.*  (citation and quotation omitted).  Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit.  *Id.*

Pursuant to the statute's express authority, the Secretary has issued detailed regulations defining each of the exemptions in § 207.  *See generally* 29 C.F.R. Part 541; *see also* 29 U.S.C. § 213(a)(1) (providing authority).  The regulations in effect at the time of the Mehmeti's employment provide a single three-prong test[8] for determining whether an employee qualifies for the executive exemption:

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary or fee basis at a rate of not less than

---

[8]In 2004, the Department of Labor amended the regulations governing administrative employees. Prior to the amendment, the regulations allowed employers to demonstrate an employee's qualification for the exemption under one of two tests, the "long test" and the "short test." The long test covered lower-income employees; within a certain salary range, an employer was required to demonstrate that more stringent requirements were satisfied to establish an exemption. When an employee earned above the range included in the long test, the exemption could be demonstrated using the simpler short test.  The long test no longer exists; the short test was modified in the new regulations and is now called the "standard test."  It applies to all employees that an employer seeks to designate as exempt administrative staff.  *See generally* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule, 69 Fed. Reg. 22122 (Apr. 23, 2004).

10

> $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  An employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA.  *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).  Because of the remedial nature of the statute, the Supreme Court has emphasized that the exemption should be "narrowly construed" and "limited to those establishments plainly and unmistakably within their terms and spirit."  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847-48 (6th Cir. 2012); *(citing Speedway SuperAmerica*, 506 F.3d at 501) (*quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)).

Furthermore, an employer may satisfy the salary-basis test even though it chooses to pay salaried employees on an hourly basis.  *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006)*; see Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) ("[T]he Wage-Hour Administrator of the Labor Department has advised that hourly employees may be salaried  if they are guaranteed a predetermined number of paid hours.") (*citing* U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (Sept. 22, 1965), 1965 DOLWH LEXIS 171; U.S. Dep't of Labor, Wage and Hour Div., II Field Operations Handbook § 22b03 (May 12, 1970)).

The regulation requires that a defendant show that the plaintiff was paid: "(1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed." *Baden–Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627 (6th Cir. 2009).

An employee is considered to be paid on a "salary basis" for FLSA purposes if he

"regularly receives each pay period on a weekly . . . basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 CFR § 541.602(a).  The regulations also provide that "an exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minium weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 CFR § 541.604(b).  "The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek."  *Id.*

Courts have held that the ultimate conclusion that an individual is an "employee" within the meaning of the FLSA is a legal determination rather than a factual one.  *Martin v. Selker Bros.*, 949 F.2d 1286, 1292 (3d Cir. 1991); *Castillo v. Givens*, 704 F.2d 181,185 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir.1995); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987), *cert. denied*, 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).  However, any subsidiary factual issues leading to this conclusion are questions of fact for the jury.  *Castillo*, 704 F.2d 181, 185 n. 9 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *Lauritzen*, 835 F.2d at 1535; *Bonnette*, 704 F.2d at 1469; *Walters v. Am. Coach Lines of Miami, Inc.*, 569 F.Supp.2d 1270 (S.D. Fl. 2008) (Questions of how employees spent their time working for their employer is question of fact, while question whether their particular activities excluded them from overtime benefits of FLSA is question of law.); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (Question of whether mortgage bankers' primary duty in their employment with mortgage lender was selling financial products or instead involved such tasks as collecting and analyzing customer information, determining which financial products best met customer needs, and

advising customers regarding different financial products was for jury in mortgage bankers' action alleging that lender violated FLSA.)

Mehmeti contends that he does not meet the salary requirement to be an exempt employee.  He claims that  his pay was not a "predetermined amount," as he completed time cards upon which his pay was calculated.  (Doc. No. 54 at 5.)  Mehmeti further contends that because he does not meet the first prong (salary-basis) of the test, whether his duties were managerial are not relevant.  (Doc. No. 54 at 3.)  Defendants contend that Mehmeti's weekly salary of $510, not counting other cash payments, coupled with his managerial duties, make him exempt under the FLSA.  (Doc. No. 48 at 5-9.)  The Defendants claim that their pay arrangement to Mehmeti satisfied the FLSA as the regulations allow an exemption even when an employee receives additional compensation for hours worked beyond the normal workweek.  *See* 29 CFR § 541.604.  (Doc. No. 48 at 6.)

Mehmeti's time cards[9] reflect that, on average, he worked 61 hours per week.  (Doc. No. 45-14.)  His hourly rate ranged between $15 and $17.  (Doc. No. 45-12 at 4.)  There is also evidence that Mehmeti received weekly cash payments covering his hours worked.  Defendants contend that because Mehmeti earned over $455 during 2008 through 2010, he meets the first prong.  Plaintiffs acknowledge that Mehmeti did earn over the $455 amount, but assert that it was not a "predetermined amount" as it was based entirely on the number of hours worked. (Doc. No. 54 at 4-5.)  Plaintiffs rely on Tarantino's testimony that Mehmeti was paid based upon the number of hours he wrote on his time card.  (Doc. No. 44, Tarantino Dep. at 33-34.)  Tarantino, however, also testified that Mehmeti was paid salary.  *Id*. at 36.  Plaintiffs concede that, based upon the amount of his wages, Mehmeti may be classified as exempt from FLSA starting in July, 2007 when his gross pay was $510 per week.[10]  (Doc. No. 54 at 4, fn. 2.)

_____

[9]Defendants provided only eleven time cards as evidence.  (Doc. No. 45-14.)

[10]According to earning records, through a check dated June 28, 2007, Mehmeti received $510 in gross pay.  (Doc. No. 45-13 at 2.)  This same amount was paid through March 29, 2008. *Id*. at 2-4.

Plaintiffs still contend, however, that because Mehmeti was not paid a "predetermined amount," he does not meet the first prong of the exemption test.

The Court finds that Mehmeti may indeed be an exempt employee beginning in July, 2007 when he earned over the $455 weekly amount.  Nonetheless, such a determination cannot be made as there are questions of fact regarding Mehmeti's hours worked and payments received.  The Court, therefore, recommends that Plaintiffs motion for summary judgment be denied relating to Mehmeti's status under the FLSA.  Questions of fact remain as to whether Mehmeti is an exempt employee under the FLSA.

### B. Plaintiffs' Motion for Certification of Collective Action

Plaintiffs move for certification of the collective action under FLSA, asserting that discovery confirmed Plaintiffs are similarly-situated.  (Doc. No. 47.)  Defendants contend that, unlike the opt-in Plaintiffs, Mehmeti is exempt under the FLSA and is not a proper lead plaintiff. Furthermore, some of the Plaintiffs worked at La Strada, instead of La Dolce Vita, and three Plaintiffs (Boncser, Ross and Bollinger) have brought additional claims of unpaid wages.  (Doc. No. 49.)

Section 216(b) of the FLSA permits employees to recover unpaid overtime compensation by suing an employer on " behalf of ... themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action."  *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (*citing* 29 U.S.C. § 216(b) and *Hoffmann–La Roche, Inc., v. Sperling*, 493 U.S. 165, 167–68 (1989)).  Unlike a class action under Fed.R.Civ.P. 23, in a collective or representative action under the FLSA, similarly situated employees must "opt into" the action by filing written consents.  *Compare* 29 U.S.C. § 216(b), *with* Fed.R.Civ.P. 23; *see also Comer*, 454 F.3d at 546.  Employees named in the collective action complaint are called "named" or "lead" plaintiffs, and those who opt in by later filing written consents are called "opt-in" plaintiffs.  *See Frye v. Baptist Mem. Hosp.*, No. 07–2708, 2010 WL 3862591, at *2 n.4 (W.D. Tenn. Sept. 27, 2010).  Unlike absent class members in a Rule 23 class action, opt-in plaintiffs who file written

14

consents and join the collective action are party plaintiffs. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 583 (6th Cir. 2009) (citation omitted).

To determine whether plaintiffs are similarly situated, courts generally employ a two-stage inquiry.  *See O'Brien*, 575 F.3d at 583; *Comer*, 454 F.3d at 546; *Frye*, 2010 WL 3862591, at *2.  "The first takes place at the beginning of discovery.  The second occurs after all of the opt-in forms have been received and discovery has concluded."  *Comer*, 454 F.3d at 546 (citation and internal quotation marks omitted).

At the first stage, courts apply a "fairly lenient" standard to determine whether plaintiffs are similarly situated, relying on the pleadings and any filed affidavits.  *See Comer*, 454 F.3d at 547; *Carter v. Jackson–Madison Cnty. Hosp. Dist.*, 2011 WL 1256625, at *13 (W.D. Tenn. Mar. 31, 2011); *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F.Supp.2d 957, 959 (W.D. Mich. 2009); *Fisher v. Mich. Bell Tel. Co.*, 665 F.Supp.2d 819, 825 (E.D. Mich. 2009) (citations omitted). Named plaintiffs need only make a "modest factual showing" of class-wide discrimination.  *See Comer*, 454 F.3d at 546; *Jackson*, 2011 WL 1256625, at *14; *Pacheco*, 655 F.Supp.2d at 825 (citations omitted); *cf. Fisher*, 655 F.Supp.2d at 825 (noting that named plaintiffs must "submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists" (citation and internal quotation marks omitted)).  If a court concludes that the potential opt-in plaintiffs are similarly situated to the named plaintiffs, the court conditionally certifies the class, and potential opt-in plaintiffs are provided notice and an opportunity to join the action by filing written consents.  *See Comer*, 454 F.3d at 547; *Carter*, 2011 WL 1256625, at *18; *Fisher*, 655 F.Supp.2d at 828–29.   Here, the Court conditionally certified the class on November 17, 2010.  (Doc. No. 14.)

At the second stage, courts apply a "stricter standard."  *Id.*; *Jordan v. IBP, Inc.*, 542 F.Supp.2d 790, 812 (M.D. Tenn. 2008) ("The burden of demonstrating that class members are similarly situated is significantly higher at the decertification stage ...." (citation omitted)). Named plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated." *O'Brien*, 575 F.3d at 584 (citation omitted).  Because the second stage follows discovery, a court "has much more information on which to base its decision" and "examine[s] more closely the

15

question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547 (citation and internal quotation marks omitted); *see Frye*, 2010 WL 3862591, at *2 (citations omitted); *cf. White v. MPW Indus. Servs.*, 236 F.R.D. 363, 366 (E.D. Tenn. 2006) (contrasting its first-stage analysis with the second-stage analysis and explaining that, at the second stage, a court "makes a factual determination on the similarly situated question" (*citing Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1213 (5th Cir. 1995))).  To avoid decertification, the named plaintiff must introduce "substantial evidence" that the opt-in plaintiffs are similarly situated.  *Frye*, 2010 WL 3862591, at * 2 (citations omitted); *see Crawford v. Lexington–Fayette Urban Cnty. Gov't*, 2008 WL 2885230, at *5 (E.D. Ky. July 22, 2008) (citations omitted); *cf. Heldman v. King Pharm., Inc*., 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011) (contrasting first-stage analysis with second-stage analysis and explaining that, at the second stage, a plaintiff must show "substantial evidence" (*citing Frye*, 2010 WL 3862591, at *2))).

The primary factors a court should consider during the second-stage analysis are: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available; and, (3) fairness and procedural considerations.  *Frye v. Baptist Mem'l Hosp., Inc*., 2012 WL 3570657 (6th Cir. Aug. 21, 2012); *Creely v. HCR ManorCare,Inc*., – F.Supp.2d –, 2013 WL 377282, *3 (N.D. Ohio, Jan. 31, 2013).  Although the "similarly situated" requirement is elevated at the second stage, it remains less stringent than the requirement that common questions predominate in certifying class actions under Rule 23.  *O'Brien*, 575 F.3d at 584 (*citing Grayson v. K Mart Corp*., 79 F.3d 1086, 1095–96 (11th Cir. 1996)).  Plaintiffs need not be identically situated to proceed collectively.  *Comer*, 454 F.3d at 546–47; *Frye*, 2010 WL 3862591, at *3; *Crawford*, 2008 WL 2885230, at *5 (citations omitted). At the second stage, "the question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected."  *Monroe v. FTS USA, LLC*, 763 F.Supp.2d 979, 994 (W.D. Tenn. Feb. 7, 2011) (*citing Frye*, 2010 WL 3862591, at *3); *see also Wilks v. Pep Boys*, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006) (citation omitted).

If a court concludes that the plaintiffs are similarly situated, it denies the motion to decertify, and the action proceeds collectively.  *White v. Baptist Mem'l Health Care Corp*.,

16

08-2478, 2011 WL 1883959 (W.D. Tenn. May 17, 2011) *aff'd*, 699 F.3d 869 (6th Cir. 2012); *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Monroe*, 763 F.Supp.2d at 994-996 (citations omitted). If the court concludes that plaintiffs are not similarly situated, it "decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—*i.e.* the original plaintiffs—proceed to trial on their individual claims." *Hipp*, 252 F.3d at 1218 (citations and internal quotation marks omitted); *Frye*, 2012 WL 3570657 (District court has discretion to decertify FLSA class based upon failure to meet the similarly-situated requirement); *see also Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010) (explaining that "[w]hen a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008) (explaining that, if plaintiffs are not similarly situated, the court "must dismiss the opt-in employees, leaving only the named plaintiff's original claims"); *cf. O'Brien*, 575 F.3d at 573 (affirming dismissal of the opt-in plaintiffs and noting that most subsequently filed individual actions); *Fox v. Tyson Foods, Inc.*, 519 F .3d 1298, 1301 (11th Cir. 2008) (affirming decertification of an FLSA collective action, dismissal of the opt-in plaintiffs, and severance of named plaintiffs into multiple individual actions) (citations omitted).

Applying the factors a court must consider at the second stage, the Court finds that certification is not appropriate. First, three of the opt-in plaintiffs allege unpaid wages in addition to overtime. Also, not all employees worked at the same position or at the same restaurant. *See Frye,* 2012 WL 3570657, *5 (dissimilarities in plaintiffs' work experiences weigh against certification). More importantly, Mehmeti, the lead plaintiff, may have no FLSA claim due to his potentially being an exempt employee. There is no dispute that none of the opt-in Plaintiffs are exempt. As such, Mehmeti is not similarly situated to act as the lead Plaintiff. *See In re Family Dollar*, 637 F.3d 508, 519 (4ᵗʰ Cir. 2011). The Court, therefore, recommends Plaintiffs' motion for certification be denied and the collective action Plaintiffs be dismissed without prejudice.

An action is commenced under the FLSA when a party files suit, but in the case of a collective action, if a party's name does not appear on the complaint, the action is commenced

when that party files his or her written consent to become a part of the collective action.  *Green v. Harbor Freight Tools USA, Inc.*, – F.Supp.2d–, 2012 WL 3563977, at *12 (D. Kan., Aug. 17, 2012).  The statute of limitations for a plaintiff in a collective action is tolled after the plaintiff has filed a consent to opt in to the collective action, and begins to run again if the court later decertifies the collective action.  *Id*.  There is no language in the FLSA that provides for tolling the claims of former opt-in plaintiffs following decertification of a collective action.  *Id*.

As such, the Court hereby recommends that to avoid prejudice to opt-in Plaintiffs, the Court invoke its equity powers to toll the applicable statute of limitations for 60 days to permit opt-in Plaintiffs to refile.  *See e.g., Beauperthuy v. 24 Hour Fitness USA, Inc*., 772 F.Supp.2d 1111, 1134 (N.D. Cal.2011) ("To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order."); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 284 (N.D. Tex. 2008) (tolling statute of limitations for opt-in plaintiffs for 30 days); *Smith v. Heartland Automotive Servs*., 404 F.Supp.2d 1144, 1155 (D. Minn. 2005) (staying decision granting motion to decertify for 60 days to permit opt-in plaintiffs to refile their claims).

As Mehmeti's claim may proceed, the Court will address his arguments pertaining to the three-year statute of limitations and liquidated damages.

## VI. Three-Year Statute of Limitations

Plaintiff contends that the FLSA's three-year statute of limitations is applicable because Defendants acted willfully in denying overtime pay.  (Doc. No. 45-1 at 16-18.)  Defendants assert that there is insufficient evidence to demonstrate willfulness as a matter of law.  (Doc. No. 48 at 11-14.)

Where violation of the FLSA is "willful," a three rather than a two-year statute of limitations applies.  29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988); *Dole v. Elliott Travel & Tours*, 942 F.2d 962, 966 (6th Cir. 1991).  The party alleging willfulness bears the burden of proof "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by

18

statute." *Richland Shoe*, 486 U.S. at 133, (*quoting Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)); *Elwell v. Univ. Hosps. Home Care Servs*., 276 F.3d 832, 842 (6th Cir. 2002); *Schneider v. City of Springfield*, 102 F.Supp.2d 827, 835 (S.D. Ohio 1999).

The determination of "willfulness" for purposes of § 255(a) is an appropriate issue for decision by the Court on summary judgment.  *See Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir. 1999) (approving finding of willfulness by the district court). Furthermore, courts have held that a violation of the Act was willful where undisputed evidence showed that the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA." *Elliott Travel & Tours, Inc*., 942 F.2d at 967 (*citing Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988)).

An employer violates the Act wilfully if a violation occurs and the employer knows or has reason to know that the employee in question is protected by the Act.  Willfulness does not include mere negligence or inadvertence.  However, it does not require intent.  *Benson v. Universal Ambulance Service Inc.*, 497 F.Supp. 383 (E.D. Mich. 1980); *Usery v. Godwin Hardware Inc.*, 426 F.Supp. 1243 (E.D. Mich. 1976); *Majchrzak v. Chrysler Credit Corp.*, 537 F. Supp. 33, 38 (E.D. Mich. 1981).  If an employer acts unreasonably, but not recklessly, in determining its legal obligations under the FLSA, its violation is not "willful."  *McLaughlin*, 486 U.S. at 135 n. 13, 108 S.Ct. 1677.  *Schneider v. City of Springfield*, 102 F. Supp. 2d 827, 840 (S.D. Ohio 1999).  When an employer's violation is "willful," an employee may recover back pay for a period of three years prior to filing his lawsuit.  *Schneider*, 102 F.Supp.2d at 835 (*citing McLaughlin* at 135.)

Defendants acknowledge they had actual notice of the requirements of the FLSA.  La Dolce Vita had been investigated for a violation in the past and Tarantino testified that he had previously been ordered to compensate an employee for unpaid overtime wages.  (Doc. No. 44, Dep. of Tarantino at 78-79.)  Furthermore, Defendants conceded that they did not keep accurate records and were "ignorant" about the payroll system and the fact that overtime was not being

paid.  Defendants payroll records were inaccurate, failing, for example, to reflect cash payments and indicating compensation for a regular schedule of 20 to 30 hours per week, rather than actual hours worked.  Although the Defendants testified that they made every effort to comply with the FLSA, including their respective recordkeeping requirements through Paychex, the Court finds this testimony inconsistent with the documentary evidence and the credible testimony of other witnesses.  Accordingly, the Court finds that the Defendants either knowingly violated or, at minimum, acted in reckless disregard of the recordkeeping requirements.  As a result, under § 255(a) of the FLSA, the Court recommends a three (3) year statute of limitations.

### VII.  Liquidated Damages

Plaintiff claims that he is entitled to liquidated damages under FLSA because the Defendants' refusal to pay wages/overtime wages was not in good faith.  (Doc. No. 45-1 at 18-19.)  Defendants do not dispute this claim.

Section 216(b)of the FLSA authorizes liquidated damages for violation of the overtime provisions.  Liquidated damages "are compensation, not a penalty or punishment."  *McClanahan v. Mathews*, 440 F.2d 320, 322-23 (6th Cir. 1971) (*quoting Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942)).  A district court is permitted to deny an award of liquidated damages "if and only if, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act."  *Elliott Travel & Tours*, 942 F.2d at 967 (*quoting Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982) (emphasis in original)).  The two pronged requirement that an employer show both good faith and reasonableness is derived from the FLSA itself.  29 U.S.C.A. § 260.  Summary judgment may be proper on the question of liquidated damages as the existence of "good faith" is a matter left to the discretion of the Court. *McClanahan*, 440 F.2d at 322.

The burden of establishing good faith for an employer is "substantial."  *See, e.g., Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 836 (6th Cir. 2002); *Elliott Travel & Tours*, 942 F.2d at 967.  An employer must prove that it took "affirmative steps" to discover the meaning and application of the FLSA to the employer's business.  *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (*quoting Martin v. Cooper Elec. Supply Co.*, 940

F.2d 896, 908 (3d Cir. 1991)).  Moreover, failure to comply with the FLSA must be based on reasonable grounds; "an employer who negligently misclassifies an employee as exempt is not acting in good faith." *Id.*

Evidence demonstrates that the Department of Labor ("DOL") notified Defendants regarding FLSA overtime standards after a complaint by Newberry in 2009.  (Doc. No. 44 at 77-79.)  Tarantino acknowledged that the notification was prior to the filing of the instant complaint.  *Id.* at 79.  Tarantino believed that Paychex was paying overtime hours as he never received any complaints from employees.  The Court finds that the Defendants' complacency and ignorance of law constitute negligence sufficient to defeat good faith.  *See Indiana Michigan Power*, 381 F.3d at 584 ("[t]he employer has an affirmative duty to ascertain and meet the FLSA's requirements"); *Elwell*, 276 F.3d at 841 (finding that defendant should have requested an opinion from the DOL regarding compliance with the FLSA).  The Court recommends that Plaintiff be awarded liquidated damages under the FLSA should a jury find damages for unpaid overtime.

### VIII.  Summary Judgment Regarding Opt In Plaintiffs

Because it is recommended that the collective action Plaintiffs be dismissed without prejudice upon the decertification of the complaint, summary judgment is moot regarding Defendants' liability towards them.

### IX.  Conclusion

For the foregoing reasons, the Court recommends that Plaintiffs' motion for class certification be denied and that the collective action Plaintiffs be dismissed without prejudice, but toll the applicable statute of limitations for 60 days to permit opt-in Plaintiffs to refile.  (Doc. No. 47.)  It is further recommended that Plaintiffs' motion for summary judgment be:

    (1)    Denied as to Mehmeti's status under the FLSA as questions of fact remain regarding whether Mehmeti is an exempt employee under the FLSA;

    (2)    Granted as to Defendants' willfulness and thus the imposition of a three-year statute of limitations; and,

21

       (3)     Granted as to liquidated damages in the event liability under FLSA is established.

(Doc. No. 45.)

                                                            s/ Greg White
                                                    United States Magistrate Judge

Date:   February 22, 2013

## OBJECTIONS

      **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**